ELLIS, Judge
(dissenting).
Being of the opinion that the plaintiff has proven an accident, injury and total disability under the compensation laws and interpretation thereof by the Courts, I am duty bound to respectfully dissent.
The majority opinion apparently is based upon the proposition that the plaintiff did not suffer an accident and attempts to explain Dr. Dowell’s finding of total disability with the statement: “* * '* If the examining physician knew all of the facts and the various things the claimant actually did or said at the time, or immediately following one of these lumbosacral strains, he would be in a position to properly evaluate a claimant’s disability at the time of his examination. If Dr. Dowell had known at the time he first examined the plaintiff in this case that the claimant made no further complaint to the witness Jones other than to say he hurt his back but showed no outward emotion by evidence of pain immediately following the strain after pushing on the box, and also while hooking the tongs to lift the box of merchandise which was being unloaded by the winch at the truck driver’s last destination; returning to the employer’s place of business that afternoon without reporting an accident to the management; exhibiting no outward emotion of any disabling condition on the way back to the warehouse to Jones or when he called at defendant’s office Friday afternoon or Saturday morning to get his check, no doubt it would have caused the doctor to have modified his diagnosis.”
The basis for the finding of no accident apparently is the conflicting testimony of the plaintiff that when he returned to the warehouse he reported the accident with that of the defendant’s witnesses that he did not report the accident nor did he make any request at any time for medical assistance following the accident of June 25th and that he knew he should have reported the accident to the defendant’s manager. From this testimony the deduction was made that the plaintiff evidently did not consider the accident and injury serious until after he knew he was discharged for breaking the rules of the defendant company and failing to report to work.
The failure to report the accident is the entire basis of the majority opinion. I am of the opinion that the plaintiff did not report the accident to anyone in authority, but nevertheless, plaintiff has proven the accident, injury and resulting disability by ample testimony.
*132 Plaintiff had been working for Huff Truck Lines, Inc. for quite some time at a wage of $40 per week, and in February 1953 it is admitted by the defendant that he suffered a back injury, was treated by the doctor and paid a couple of weeks compensation and thereafter returned to work. On June 25, 1953, while assisting in the unloading of a large machine the plaintiff testified that he injured his back. Plaintiff stated that he was pushing on the machine and thereafter he did no more work.
The driver of the truck fully corroborated the plaintiff with regard to the happening of the accident. His testimony with regard to the actual happening of the accident was as follows:
“Q. Did Judison try to help you unload the machine? A. Yes, sir, we— me and him and a white man pushed it back to the back on the rollers and it worked all right and when we got it back to the back we put it on skids to let it down on skids and it had slipped off the skids so we had tp push it back on the truck and that’s when I heard Judison say he had hurt his back.
“Q. He said it out loud that he had hurt his back? A. Yes, sir.
“Q. Did he continue to work with you after he said that? A. No, sir, I told him to go on and take it easy and me and some other boys, four or five of us, we let it down on the ground and that’s where I checked him out.”
This testimony is fully corroborative of the plaintiff’s as to when and how the accident happened. After the accident the driver made one more delivery and then returned to the warehouse. The preponderance of the testimony is to the effect that the plaintiff did not report the accident when he returned on Thursday evening, June 25th. He did not return to work on Friday but sent his father for his check. They refused to give the check to. his father, who testified that the plaintiff had told him he had, injured his back but that he didn’t tell anyone at the defendant’s place of business because they did not ask him. Plaintiff states that between 5:30 and 6:00 he went to defendant’s place of business in order to get his check. Present at the time plaintiff came there was the bookkeeper, stenographer, and a foreman. The testimony of the office employees is to the effect that the plaintiff was drinking and that he did not tell them anything about any accident or injury to his back. He talked to Miss Huff on the telephone and it was her testimony that plaintiff must have been drinking and further that he did not report any injury or accident to her. She told him at that time that he was through, in other words, fired. Plaintiff reported the next morning to get his check and found out that he was definitely fired for not reporting to work the previous day. The plaintiff then told a fellow employee, Bankston, that: “ * * * ‘They wants to lay me off and I am down in my back’ and I say, ‘Yeah?’ and he says, ‘if they do I will mess them up,’ and that’s far as I know about it.” He also told James Walker, another co-employee, that “his back was out on him and looked like they were trying to get rid of him,” and that if they got rid of him he “was going to lay up on them.”
Miss Huff, who apparently runs the business, testified on cross examination as follows:
“Q. When did you first realize that Judison had hurt his back on June 25th? A. Well, now, sir, I don’t like your question. Do you mean when was I first told? I haven’t realized it yet.
“Q. Well, when were you first told that Judison had hurt his back? A. I was first told it by one of my men later that Saturday morning. Someone came in and * * * can I quote what was told me ?
“The Court: Yes. A. AH right, someone came in and told me that when Jodda left my office and went out there he said that his back had been hurt on Thursday and that he certainly was going to make me pay if I fired him.
*133 “Q. Now, who told you that? A. I don’t remember.
“Q. You don’t recall? One of your employees? A. One . of my employees, so I promptly called Willie Jones in, my trailer driver, who testi-. fied this morning, and asked Willie if he knew anything about it and he said that the only thing he knew was when they were unloading out there at the Istrouma Laundry Jodda said that he had hurt his back when they were unloading the thing and I said to Willie, ‘Did he say that he had strained his back, did he say he had injured his back, or what?’ and he said, ‘No, he just said that it made his back'hurt to .unload,’ and now that is all I have ever heard about it. Willie said that he was not under the impression that he was injured, I told him, I said, ‘You know my rules, that if anybody is hurt on the job, report it immediately.’ ”
This is practically the entire testimony upon which the majority opinion rests. There is no doubt in my mind that the plaintiff thought he had hurt his back and so told the driver of the truck. I agree with the majority opinion that possibly plaintiff did not think that his back was seriously injured and further that he did not report it to the bookkeeper, stenographer, foreman or manager, Miss Huff, but he did tell two co-employees after he found that he was fired that he had hurt his back or was down in his back, and also, Miss Huff, the manager of the business knew from Saturday morning that he claimed a back injury. She did not call plaintiff back in nor did she order him to report to a doctor. Apparently she made no further inquiries.
Had this been all the testimony other than, plaintiff’s own that he was totally disabled, then I would be of the opinion that he had failed to prove an accident, injury and disability by sufficient testimony, but on July 2nd, 1953, or approximately one week after the accident, he consulted an attorney and was examined by Dr. Dowell. The doctor’s findings on this visit are quoted at length in the majority opinion. There can be no doubt that Dr. Dowell was of the opinion that the plaintiff had incurred a recurrent lumbosacral sprain, and the fact that he had some narrowing of the disk space between Inl- and L-5 and 1^5 and S-l, along with the arthritic changes might have contributed to the recurrent back injury. He felt that the plaintiff was in need of treatment and estimated that he would be partially disabled for six weeks, and he deferred any evaluation for any permanent disability until maximum improvement had taken place. This medical testimony is unquestioned and undisputed in the record, and it is the only medical testimony in the record.
Thus, we have an employee who had previously suffered a back sprain, had been treated and gone back to work after payment of two weeks’ compensation, who several months later testified that he hurt his back while unloading heavy machinery, and who immediately told the driver of the truck, and although he did not tell anyone in authority at the place of business of his employer upon his return, he did on the morning of the second day after the accident tell two fellow employees, one of whom presumably must have told Miss Huff. He then went to a competent doctor who found that he had suffered a back injury. There is no intimation that he suffered a back injury other than as contended. The doctor’s testimony, in my opinion, clinches plaintiff’s claim of an accident and injury to his back, regardless of whether the plaintiff himself thought it was serious or not. The effects of plaintiff’s failure to report the accident and his threats to “lay up” on the defendant amount to nothing in view of Dr. Dowell’s definite testimony.
It is also argued that this law suit, was brought about as a result of the defendant having discharged the plaintiff. The plaintiff did state that if he was discharged he would “lay up” on the defendant, but his reason was always “because I am down *134 in my back,” or “my back is hurt.” In my opinion, such testimony is corroborative of plaintiff’s claim that he injured his back and, further, there can be no question of it when we consider Dr. Dowell’s testimony.
Dr. Dowell again examined this plaintiff on August 27, 1953, and he testified:
“* * * I at that time concluded that I felt this patient had made some improvement since the time of my last examination but I do not feel that he is completely recovered. His slow recovery is probably on the basis of changes noted in the x-rays mentioned in my last report. I felt that this patient was capable of returning to most types of work, but I would not recommend any lifting of very heavy objects, but I felt that he could do a reasonable amount of bending in his back. I would suggest letting the patient return to work and defer any final evaluation until he has been back at work approximately six to eight weeks. This will enable me to determine just how well his back holds up under hard labor.”
We see from the above testimony that plaintiff on August 27, 1953 was still not able to return to his former work which entailed lifting of very heavy objects. Dr. Dowell re-examined plaintiff on September 22nd and rendered a report of September 24, 1953. In this report he states that plaintiff told him he had not returned to work because he didn’t feel his back had made any further improvement and he was unable to do any heavy lifting. On this examination Dr. Dowell found very little change from the previous examination and he concluded:
“I don’t feel that this patient has made much change since the time of my last examination. I feel that some of his back discomfort may be due to the narrowing of the disc spaces between LrA and D-5, and D-5 and S-l. I would still suggest that this patient make every attempt to return to work to see how his back does with a reasonable amount of work.”
Thus, from the doctor’s testimony at this time plaintiff was still unable to do heavy lifting.
On March 26, 1954 plaintiff was again examined by Dr. Dowell and a report rendered on March 29th. In this report he stated:
“This patient has shown no improvement since my last examination, and actually has more limitation of motion in his spine at this time than he did at the time of my last examination. I feel that he is still partially disabled at this time. It is difficult to say just how much of it is due to the sprains which he incurred and how much is due to narrow disc spaces and arthritic changes in his back.”
Plaintiff was again examined by Dr. Dowell on April 1st and again on May 18, 1954. Of the April examination the doctor testified that plaintiff was not doing quite as well. As to the May examination he rendered a report in which he stated:
“This patient has shown some improvement since my last examination. However he still has muscle spasm in his lower back in certain positions. I consider him partially disabled at this time. I am unable to state whether or not he will have any permanent disability.”
Dr. Dowell was asked the following question and gave the following answer:
“Q. Doctor, in the condition you found him in on your last examination, in your opinion do you think the man is fit at this time to do any heavy lifting or pushing large heavy objects? A. No, I would not recommend heavy lifting now. I think he probably could go back to work, but I would recommend sending him back to light work and let him gradually work in and *135 see what he could do. I don’t recommend heavy lifting now.
“Q. From your examination, Doctor, and your conversations with this patient on these various visits and examinations, would you have an opinion as to whether or not his complaints were legitimate in connection with his back? A. Well, I can’t say whether it is legitimate. I would say that his complaints are consistent with the physical findings here.”
There is no doubt hut that Dr. Dowell considered the plaintiff as having aggravated his back condition by the, lifting injury, and that one day prior to the trial on May 18, 1954 after examination of plaintiff, he was still of the opinion that plaintiff could not do any heavy lifting.
While the majority opinion speaks of a maze of conflicting testimony, the only conflicts relate to whether the plaintiff reported the accident to Miss Huff, the office manager, the Stenographer, or Wilson, the foreman. As I view the case it is immaterial, when we consider all the other testimony which I have outlined, whether he reported the accident and injury to his back to the people named or not. As he actually suffered the accident and injury and is totally disabled as a result thereof, he is entitled to compensation, and I say that his own testimony, together with that of the driver of the truck, whom he told at the time about having hurt his back, and his statement to two of his fellow employees that he had hurt his back and because of that, if they discharged him he would “lay up on them” or “mess them up”, and the further positive testimony of Miss Huff that on Saturday morning she' was told by one of her employees that plaintiff had injured his back as he claimed, and Dr. Dowell’s frank, unimpeached and unquestioned testimony that within one week after the accident he found the patient suffering with a back injury and thereafter examined him quite a number of times and even the day before the trial of the case and he still found the plaintiff suffering with a back injury and unable to perform any labor which involved the lifting of any heavy object, make it immaterial whether plaintiff reported the accident or did not report the accident to anyone in authority.
Furthermore, much is made of the fact that the plaintiff did not request medical assistance from his employer. It is equally true that the employer knew that this man on Saturday morning claimed a back injury on the previous Thursday, yet the employer insisted upon his discharge without requesting the plaintiff to report to the company doctor. It would appear to me that it is equally true that it behooves the employer as well as the employee, upon learning of an alleged accident and injury, to immediately request the employee to report for a medical examination. From the testimony it would appear that even if plaintiff had not been discharged and had returned to work that he would have been unable to perform his full duties. I say this in view of Dr. Dowell’s testimony. An important part of Dr. Dowell’s testimony is that in which he states that his physical findings were consistent with the plaintiff’s history as given to him by the plaintiff. If plaintiff’s case depended upon his testimony alone, then false testimony by him to the effect that he had reported the accident would be entitled to great weight. It is of no effect, however, where plaintiff’s accident, injury, and resulting disability is proven not only by his testimony but by corroborative testimony of various fellow employees and a reputable doctor who gave the only medical testimony in the case.
Dr. Dowell testified at length, and if astute counsel for the defendant had thought that knowledge of such facts as are set forth in the quote from the majority opinion at the beginning of this dissent would have caused Dr. Dowell to modify his diagnosis, there is not the least doubt in my mind but that a hypothetical question containing such facts would have been propounded to Dr. Dowell. Whether the doctor knew or did not know such facts *136 could not have changed his diagnosis, for the injury to the back was apparent to Dr. Dowell. There is no contention that this injury resulted from any other accident or strain. The contention is that there was no accident and no injury to the back and therefore no disability. It is strange that the defendant did not have any medical testimony in this case. When the plaintiff suffered his previous back injury in February he was sent to Dr. McVea.
For the above reasons I am of the opinion that the plaintiff should be awarded the judgment as prayed for and I therefore respectfully dissent.